SMITH, AN INDIVIDUAL, D. B. A. FAIRBORN NURSING HOME, PLAINTIFF, v. SNAPP, DEFENDANT.

Common Pleas Court, Miami County.

No. 38393.   Decided April 21, 1961.

*Messrs. Schlafman & Elliott*, for plaintiff.
*Messrs. McCulloch, Felger & Fite*, for defendant.

PORTER, J.   This is a suit on an account (and in no sense an action to impress a trust) by the operator of a rest home against the estranged widow of a man to whom the plaintiff furnished needed nursing care, medicines, medical bills and gown service over a period of a year.   It is a suit for the balance due and the unusual facts present several questions of interest and importance.

Plaintiff operates a nursing home in Fairborn, Ohio and accepted as a patient March 14, 1957, one Loren Snapp, eighty years of age at the time and a man who had just prior to his admission to the nursing home had a leg amputated.   He stayed at the home a period of fifty-four weeks and some days for which the total charge at the rate of $45.00 per week was

$2,430.00. In addition there were charges for gown service and medicines and medical service for which the plaintiff paid.

Loren Snapp had married the defendant in November, 1952. She was the cousin of his deceased wife. The marriage did not work out and they separated in 1954. In the interim he had made out a deed to two properties which he owned prior to the marriage. This deed was to a trustee and the trustee conveyed to the new husband and wife to create survivorship features. The only evidence of any consideration for this deed was that of the defendant to the effect that she had paid some money out of her own pocket "to get him out of a jam."

After the separation Loren Snapp did not support his wife. She was supported by social security and income from making alterations. Loren Snapp himself was on social security and lived from the proceeds of this and the rentals from the two properties.

The plaintiff was partially paid as the result of the application to the bill by his daughter of this social security money and rent money. Plaintiff believed that upon the death of Loren Snapp he would have an estate and she would receive the balance from this.

However, upon Loren Snapp's death, by operation of the survivorship clause in the deed of trust the property went to the defendant. She was approached regarding payment of the bill but this was refused by the defendant because she felt that if she did have an obligation it was "paid" because she did not get half of the rents from the two properties in which she had a half interest—that she did not get any rents from 1954 to 1958.

There is an allegation in the amended petition that the defendant "orally agreed to pay plaintiff for said necessaries and lead plaintiff to believe she would pay therefor." As to this the evidence compels the finding that the defendant never agreed orally or in writing to pay the plaintiff for the necessaries and did not lead her to believe that she would do so. She did indicate that she supposed she might have to but that was after the services were performed and on reflection she changed her mind.

It should be observed that the evidence showed that the decedent was never the same after the amputation of his leg and he died shortly after the time when he was advised to submit to surgery which he could not afford because the defendant

would not agree to join with him and sell a property. Under the circumstances it is the conclusion of the Court that the account sued on by plaintiff is for expenses of last sickness. See cases in "Words and Phrases" under "Last Illness" and "Last Sickness."

In plaintiff's brief, page 2 et seq., it is stated:

"The Court's attention is respectfully invited to the case *In re Guardianship of Mary Wilmuth Milholland*, 30 Nisi Prius Reports, New Series, 563; wherein Judge Wiseman carefully examines the liability of a widow, under the husband & wife statutes (Section 3103.01 et seq., Revised Code), for her deceased husband's funeral expenses of her deceased husband who left no estate. The syllabus of that case reads as follows:

" 'By virtue of the mutual obligations and responsibilities imposed by Sections 7995, 7996 and 7997, General Code (now Sections 3103.01, 3103.02 and 3103.03, Revised Code), and upon the grounds of necessity and public policy, it is the duty of the widow to take charge of the body of her deceased husband and to see that it is given a decent burial; and where the husband leaves no estate, and the widow, because of mental disability, is incapable of contracting, the widow's estate is liable for the necessary and reasonable expenses incurred in such burial.' "

The Court based its decision therein on the "broad ground of necessity and on the broader ground of public policy" in finding the widow's estate is liable for her husband's funeral expenses in the absence of a contract when her husband left no estate whatsoever.

Counsel submits that the same rule applies for the expenses incurred during the last illness of the husband. In the *Milholland case* on page 569, the Court quotes the following language from Rockel's Complete Ohio Probate Practice, 4th edition:

" 'The author believes that under these statutes the wife is liable for the funeral expenses and those incurred during her husband's last illness even where she has not directly contracted for them, and that the Court will finally so hold, where the husband has no estate.' "

With this the Court agrees and therefore finds on the issues joined by the petition and answer for the plaintiff in the full amount prayed for with interest. Entry accordingly.